All right. Hear ye, hear ye, hear ye, this Honorable. Public Court of the 2nd District is back in session. Pursuant to adjournment, the Honorable Michael J. Burkhead. Be seated. Your Honor, it's the second case of the morning called 212-609, Bank of New York, et al. v. Victor J. Langman, et al. On behalf of the Apollon, Mr. William J. Holloway. On behalf of the Diapolese, Mr. Scott G. Butler. Thank you. Is it Holloway? Holloway. Oh, Holloway. Mr. Holloway, you may proceed. All right. Good morning, Your Honors. It's the Court and the Counsel, please. I represent JPMorgan Chase. We seek reversal of the trial court's order holding that the Bank of New York mortgage has priority. Over the JPMorgan Chase. And we're asserting in general two grounds. First, that Bank of New York actually had no mortgage to foreclose. That mortgage itself was foreclosed off the chain of title. By a foreclosure by Deutsche Bank that was completed in 2004. Was that the subject of the alleged forge release, are you saying? The forge release released specifically a mortgage by GN Mortgage, a 1999 mortgage. And that mortgage, at some point thereafter, we don't know exactly when, GN assigned it to Deutsche Bank. But, as I say, that mortgage was entered into and recorded in 1999. On August 16, 2000, a forged release was recorded of that particular mortgage. And the point of our briefs is that subsequent parties in the chain of title could become and were bonafide purchasers for value in good faith reliance upon that release. Now, in fact, we've cited, I think it was six different cases. I'm going back quite a ways. But one, Vogel v. Troy, was cited in 2010 by a bankruptcy court in Virginia as an example of how the principle works and that it was also the law of Virginia. Now, without taking issue with that, let me just sort of cut to the chase and what concerns me in this case. I see your argument about the BFP, and that has some ostensible appeal. But as I understand this, and tell me if I'm missing something in the dates, the Bank of New York's notice of foreclosure, the Liz Pendence, was recorded prior to JPM's assumption of the Wahoo mortgages. So isn't there an argument that JPM and subsequent parties are on notice of the Bank of New York's claimed interest in the property? Before this transaction takes place? Well, that is their argument, Your Honor, yes. Why is that not a winning argument? For this reason. For really two reasons. First, if the Bank of New York's mortgage was void, voided off the title, by the Deutsche Bank foreclosure, then what Bank of New York was filing when it filed its mortgage July 10, 2006, it was filing a belayed mortgage. And three days later, July 13, 2006, when it filed and recorded a notice of foreclosure, there's nothing in the statutes that shows that if you file a void mortgage but then file a notice of foreclosure that refers to it, that that will breathe life into that void mortgage. I see your argument, and you're doing a good job of answering all my questions, but now I'm going to throw a counterpoint on to you. In order for your points to be controlling, we would have to find that the forged release has nothing to do with anything. Because if you move back in the chain, if the release is forged, the argument is you couldn't release a forged release. The mortgage wouldn't be ineffective if it's based on a forged release. No, Mr. Mayor. So Deutsche Bank couldn't, the argument they're going to make, couldn't have released it because it was forged. Well, the fact is that you can become a bona fide purchaser for value by good faith reliance on even a forged or an accidental release. That's another way they get on the record sometimes. And if Bank of New York had, let's suppose they had discovered the forged release before Deutsche Bank completed its foreclosure, it would have intervened, doubtless, but it would have been a second mortgage. It would have been subordinate to the Deutsche Bank mortgage. Bank of New York didn't discover the forged release, so far as we know, before the foreclosure. So the foreclosure proceeds ahead, and the foreclosure, of course, does not name Bank of New York as a defendant. Why? Because there's no release there, just like they didn't name other mortgages that are in the chain of title. Bottom line is, who is responsible? Who bears the ill, if you will, of the forged release? I'm afraid it's Bank of New York for not discovering it. This actually, the dilemma of two innocent parties, is addressed in at least some of the Illinois Supreme Court cases that discuss this very topic. In their brief, Bank of New York says, well, for goodness sake, a forged deed, that doesn't give title. So why should a forged release give title? Well, the problem is that you're comparing apples and oranges. A forged deed might be comparable to a forged mortgage. And neither one is going to give, one's not going to give fee title, and the other isn't going to give mortgage title. But when the Illinois courts had to deal with the forged release, then they did address the fact that we've got two innocent parties here. And what are we going to do about that? Well, the policy in Illinois, and it's not the policy everywhere, but the policy in Illinois is that they give credit to the recording system. They want to encourage reliance on the recording system. And so that's how they come out the way they do. Good faith reliance on the recorded documents. Let me ask you a question. If after the Deutsche Bank foreclosure was final, Langeman had repurchased the property, he would have taken clear and free title? Assuming Langeman forged the release, and we don't know all the details, but let's assume for a second that Langeman was actually the person who forged the release and filed the forged release. Yes. Would he have taken good title from Deutsche Bank after the foreclosure? Wasn't the question whether it was a BFP? No, no, I'm not talking about a BFP. I'm talking about the extinguishment of the GN mortgage. You're saying that basically once Deutsche Bank foreclosed, the GN mortgage was no more, so Deutsche Bank had title free and clear. And when they sold the Hamadanis, it was free and clear title. Yes. And one of your arguments is bona fide purchase, but one of your other arguments is that basically it canceled the GN mortgage. So my question to you is going directly toward that contention as far as whether the GN mortgage was actually canceled upon Deutsche Bank's foreclosure. Would Langeman, the forger, have received free and clear title from Deutsche Bank? Well, I think he would. Really? I think he would, yes, because remember at that time, in fact, as far as I'm aware, up to this point in time, no prosecution, no criminal action has ever been brought against Mr. Langeman. In fact, as far as I know, he's working for a bank actually. Well, I'm not talking about prosecution. I'm talking about the cases that you referred to such as Obra and Lenhart. These older Supreme Court cases talked about a subsequent purchaser for value and any subsequent purchaser they talk about, any subsequent purchaser who has notice or reason to believe that there's something wrong with his title. This guy clearly would have known GN had a mortgage on his property before, so he would have been a subsequent purchaser with actual notice of the GN mortgage. Well, Your Honor, all I can say is, as I stand here, that I don't think he would be, as a purchaser, any different than Mr. Hamadani or anybody else who bought, because actually they bought from Deutsche Bank, or Hamadani bought from Deutsche Bank, or hypothetical Mr. Langeman would have bought, I suppose, from Deutsche Bank. Deutsche Bank took the title from the sheriff's sale. Well, maybe it's even more complicated. I hate to throw this thought out, but I understand your point that has some intuitive appeal. You're saying, well, if the mortgage is void, you're arguing a Liz Pendence notice can't revive a void mortgage. Yes. But isn't the point more subtle? If you're the bona fide purchaser you're alluding to, you still have notice that somebody's claiming an interest in title, some title in his property. So can you simply say, aha, well, you know, this is probably void, so therefore we're not going to take subject to this. I mean, the buyers at that point realized or should have known with a Liz Pendence somebody was asserting an interest in his property, correct? But whether or not it ultimately turns out to be void, don't they still have constructive notice of a problem there? Well, as for Deutsche Bank and Hamadani, there's nothing whatsoever in the record to suggest that they had any reason to believe that Bank of New York was still out there, but was only apparently released and by a forged mortgage. There's nothing in the record to suggest that either one of them did not take in complete good faith. I don't know if I'm answering. The mortgage is never actually released as between the original parties on a forged release, correct? That's right. So it's not extinguished. It's never totally extinguished. Well, it's never, right, it's never totally extinguished. And as they say, Bank of New York had realized during the Deutsche Bank foreclosure they could have intervened and asserted their rights, but they didn't. Now, what happens if you don't? Under the Illinois version of the Uniform Foreclosure Act, why improvise for claiming title? And that is by the term unknown persons or unknown owners. And, but, I mean, you can't just put unknown owners in the caption. You've got to file an affidavit that shows that you have made an effort to locate and be sure that you have identified everybody. Well, that affidavit is in this record. In fact, all or almost all of the records of the Deutsche Bank foreclosure are in this record. Nobody's suggested to challenge that affidavit. So that is the Illinois way of claiming title. Why? So that the property can be sold for its highest and best use. Your argument is the bona fide purchaser seems to have a lot of weight if Mr. Hamadani was standing here or Matrix Mortgage was standing here. But you're standing here in the shoes of WAMU, who, did they or didn't they have some either, some obligation based upon the title history? We're talking about a lien priority dispute in a court of equity right now. A lien priority dispute between two parties, JPR standing in the shoes of WAMU and Bank of New York. Why wouldn't we look to see whether WAMU, before they issued this mortgage, was on notice of a problem with it and should have conducted some inquiry? Well, I'm just saying, Your Honor, that there is nothing in this record, and certainly Bank of New York had every opportunity to do whatever discovery it thought appropriate to determine whether or not WAMU, as a matter of fact, TCF Bank was the purchase money lender to Mr. Hamadani. That was the lender who recorded about February 16, 2005. It was in August, August 1 of 2006, that WAMU came in as sort of a refinance of the TCF mortgage and so forth. But what I'm saying is there's nothing in the record, to answer your question, there's nothing in the record to suggest that WAMU or JPM did not conduct whatever due diligence was appropriate. Except for the fact that Bank of New York had already filed a notice of foreclosure prior to the time the Hamadanis entered into the mortgages with WAMU. Correct? I mean, chronologically, is that correct? That is correct. About two weeks before the WAMU mortgage closed on August 1, 2006. So, arguably, they had noticed that this pendants was on file before WAMU took over, gave the loan, correct? That is correct. But neither that mortgage, and neither that list pendants, nor the whole foreclosure complaint of Bank of New York itself, neither one, makes any reference to the release, or especially to the fact that the release was forged. And the record before they filed that mortgage, there were about four or five defendants in the Bank of New York foreclosure complaint that had been recorded before that obviously relied on that release. And, of course, Bank of New York left out, as defendants, Matrix and Deutsche Bank. So, I mean, why did they leave them out? And they knew that foreclosure had happened, and they didn't want to invite attention to it, I guess, but that's for somebody else to answer. Thank you, Mr. Howell. We don't have time for a vote. Mr. Weber, will you proceed? May it please the court. We're here today to determine the effect of a forged document in the chain of title of a house in Batavia, Illinois. Now, before addressing the legal issues, I'd like to touch on a couple of key factual points which may provide some context for this case. Since we recognize that the chain of title history is somewhat confusing, there are four simple facts which are not in dispute, which dispose of JPM's claims. The first fact is that in 1999, Vincent Langman obtained a mortgage with GN Mortgage, which was later assigned to the Bank of New York. And at that time, this was the first and only mortgage on the property, thus giving the Bank of New York priority. The second fact is that in 2000, a year later, Mr. Langman forged a release purporting to release the GN Mortgage. However, he continued to pay the mortgage for over two years after that time. After Deutsche Bank foreclosed, he was still paying the Bank of New York's mortgage. The third simple fact that's not in dispute is that in 2002, Deutsche Bank failed to name the Bank of New York in its foreclosure. And in doing so, it failed to extinguish the Bank of New York's interest. The fourth and final fact is that in July 13th of 2006, the Bank of New York filed its list pendants and notice of foreclosure, which placed all subsequent purchasers, including JPM, on notice of its interest. What about his argument when I asked him the question, well, this pendant notice is ineffective because it's void. The mortgage had already been extinguished. Yes, Your Honor, I couldn't agree more with that question, that the Deutsche Bank foreclosure did not foreclose on the Bank of New York's interest because the forged release has no effect whatsoever. His argument that the list pendants, our reliance upon list pendants is misplaced, it doesn't make any sense in light of the fact that we're dealing with a forged release. This isn't a simple chain of title where there's an actual release and then a party forecloses. This is a forged release, which has no effect whatsoever. Well, it has no effect whatsoever depending on the circumstances. Now, as it turns out here, I think one of the key factors is that the Bank of New York had filed, the list pendants had filed a notice of foreclosure before WAMU, who they stepped in their shoes, actually had granted the mortgage. So the argument is they're on notice of some claim to the property, whether or not the release is void or not, they can't say there's nothing on record to indicate that Bank of New York is asserting an interest. However, had they woke up after WAMU granted the mortgage, the result could have been different. I mean, I don't know if we need to get into that, but you seem to be saying that the fact that the release was forged and there was subsequent action by other banks is meaningless. Is that really true with a bona fide purchaser? Well, I guess there's sort of two main points that they have, two arguments. One is that equitable estoppel should bar a claim, and I think that point has been pretty much conceded, that equitable estoppel does not apply because they were on – JPM was on notice. So that whole first branch of their argument that – I think you take equitable estoppel out of the equation. Equitable estoppel no longer matters. What matters is that the 2002 Deutsche Bank foreclosure did not affect the Bank of New York's interest for two reasons. One, you cannot qualify as a bona fide purchaser in the face of a forged release. Mr. Holloway has stated that Illinois law says to the contrary, but he cited no case law saying that. The – Well, wait a minute. He cited Lennox and Ogle. Don't they say that? No. In Lennox, it specifically states that, quote, there was nothing in this case to give notice that a pal had lit any lien upon the property. Similarly, with Ogle, the court notes that a purchaser may rely on record of title or the title of record, quote, unless affected by notice of secret adverse titles or liens. Well, I think that's where we're getting at. I mean, your argument is that they had notice, but my question to you is – let's just take it back a step. If instead of JPM sitting there, we had either Matrix or the Hanadanis or Deutsche Bank or TCF or one of these other subsequent purchasers, presumably without notice of the forged release, Lennox and Ogle would tell us that they have lien – they take priority over you guys, right, if they had no notice? No, Your Honor. Deutsche Bank would not take priority over the Bank of New York. Neither would Matrix or WAMU or any of those entities because they relied on a forged release. Those cases don't say that you can rely upon a forged release. Similarly, plaintiffs – Well, no, they say you can rely on the title record, and the title record contains the forged release. And in order to keep everything moving along smoothly in the area of property, you have to be able to rely on the title history on a piece of property. To an extent, however, when you're relying upon a forged document, it's a long-standing principle in Illinois that forgery can confer no rights upon anyone. These cases do not – they're not – they don't relate to this specific instance where we're dealing with a forged document. Yeah, generally, you're allowed to rely on the chain of title. You're allowed to rely on recorded documents. However, in Illinois, we do have cited cases specifically saying that the recording of a forgery confers no more authority on – Deeds and mortgages, not releases. The cases you cite in your brief in Illinois have to do with deeds and mortgages and not releases. The cases that specifically deal with releases, the two that I saw, were Ogle and Lenartz, which talk about what rights could be conferred upon a bonafide purchaser for value that does not have knowledge of a forged release. And they specifically go to releases, not deeds. I understand. A forged deed doesn't convey title. I understand that concept. I'm talking about a release now. Yes, Your Honor. And a forged release has no effect whatsoever in Illinois. It's invalid. What cases do you have in response to his cases? You have a case that definitively says the forged release is void for all purposes, even against BFPs. Do you have a case that says that? I have – we cited cases from North Carolina, New Jersey, and Wisconsin, which show that a forged release has no effect whatsoever. But they're not in Illinois. I don't believe that the Lenartz and Ogle cases specifically deal with the forged release. If I'm not mistaken, they do not deal with the forged release. Well, I mean, some of the language from Lenartz says that the recording laws are designed to afford protection to parties acting in good faith and relying upon them. And in the absence of any notice or ground of suspicion, it's not the duty of a purchaser to obtain an admission of payment from the holder of a note secured by a trustee regularly released. So, I mean, those cases talk about this exact situation as it relates to, again, the Hamadanis or something like that. I mean, your second argument is relying on the notice that was actually present in the lien priority dispute to WAMU before they issued the mortgage. Correct. As far as WAMU and JPM are concerned, they were placed on notice. But I apologize, Your Honor, I don't have the cases in front of me, but I don't believe they deal with the forged release specifically. There was no cases in Illinois that say that you qualify as a bonfire purchaser when you rely on a forged release. And even if I don't believe that's the case at all, but even if it was the case, in this instance, there were suspicious circumstances. There were channels of truth that should have been explored. As the appellant cited as its main case, the Polish National Alliance v. Slepinski case, to say that you could rely upon a forged release. Are you saying that was not good faith reliance? You're correct. Yes, correct, Your Honor. Why not? Because in this case, there are a number of reasons. One, the release was defective on its face. There were numerous typographical errors. It does not contain a corporate seal of authenticity. It didn't certify or acknowledge satisfaction of the debt. And it didn't actually indicate that it was, quote, releasing the GN mortgage. And more importantly, we stand by the fact that forged releases had no effect whatsoever. We cited, there's a Fifth Circuit case, Bank of Benton v. Keith Howard Real Estate, which unequivocally states, quote, Only the interested parties can affect or erase a mortgage inscription. Only those parties that have an interest in it. You cannot go around and forge different documents, whether it's a deed, a check, a release, regardless of what it is. But to prevail, not to belabor, to prevail in this case, you don't have to convince us, we have this colloquy, whether or not a forged release can be effective for any purpose. You clearly are saying, and the facts of this case is, perhaps fortunately for your side, is that Liz Pendent's notice, your notice of foreclosure, was clearly on file before WAMU gave their mortgage, correct? Correct. And so your argument would be, is that they're on notice that there's an interest of being asserted, a mortgage being asserted on this property, totally, you know, aside from any interest of the voidness of the release, right? That's correct. When you filed the mortgage, or the foreclosure, I mean, you actually recorded the foreclosure action. Why didn't you also record the correction of title or notice of forgery? I can't speak to what the Bank of New York's intentions were at that point in time, why they didn't file. Well, first of all, there's no requirement in Illinois that you file any sort of affidavit of correction. In filing that, Liz Pendent's, we placed everyone on notice that Bank of New York had an interest which derived from the GN mortgage, and therefore it follows that that GN release was forged. Why else would you be foreclosing on a mortgage? At least it tells the other mortgage companies and the homeowners, hey, you need to look into this thing. There's a problem here. Yeah. And to get back to why the Deutsche Bank foreclosure, even in the face of a bona fide purchaser, in this case, they named the Bank of New York as an unknown owner, and that label can only be used when a party has conducted its due diligence, its reasonably prudent investigation, okay? And in this case, Deutsche Bank did not conduct a reasonable investigation because a reasonably prudent person would have conducted something like Judge Witecki suggested in the lower court, which is a credit check. If they had done a simple credit check in this case, and in order to use that unknown owner, they should have done something like this, they would have uncovered that Langman was continuing to pay the Bank of New York's mortgage for over two years after the time that that release was forged and recorded. So in order to use that unknown owner label, you can't simply throw it around. You have to use and conduct a reasonable inquiry. And if they had picked up the phone after seeing that that mortgage was continually paid, they would have called GM and GM would have said, no way, we have not released this mortgage. Or they would have seen clear as a bell that he was continuing to pay this after, and that would have led them to more inquiry, which all of these cases, Lennard's, Ogle, Lipinski, the ones that the appellant refers to, all of those cases say where there are suspicious circumstances, you have to investigate further. You have to, as they say, quote, explore the channels of truth. Is it normal practice in the industry to run for a mortgage company to run a credit check on the prior mortgage holder? Well, in this case, well, I guess not, but. That would not be standard practice, I wouldn't think. But here's what. If, sorry. No, go ahead. We're going back and forth. Mr. Holloway makes the coging point, hey, you know, Bank of New York could have done other things, could have done this, this, and that, and they would have discovered this. You're saying that they should have done this, this, and that, and they would have discovered this. But does the case really turn on, since we're setting aside equitable estoppel, does it really turn on what one side could have or should have done, or does it turn on the notice of the foreclosure? I believe, Your Honor, that this case turns on notice primarily. And clearly, J.P. Morgan, by virtue of the Illinois Dispense Act, was on constructive notice as of the moment that Bank of New York filed its list pendants. The Illinois List Pendants Act, Section 1901, specifically states that the moment a list pendant is filed, it acts as constructive notice, placing every subsequent purchaser on notice of that prior interest. So in this case, going back to that first fact, they were on notice that the Bank of New York had a prior interest, or at least was asserting its interest by way of the notice of foreclosure. And to move forward with the Deutsche Bank foreclosure, Deutsche Bank was also on notice. They had noticed that there were suspicious circumstances, the release was defective on its face, there were inquiries that Deutsche Bank should have made, which it didn't make, and therefore their foreclosure did not extinguish the Bank of New York's interest. And simply labeling someone as an unknown owner without actually conducting that inquiry and while on notice does not extinguish the prior interest holder's interest. And the Foreclosure Act specifically contemplates situations like this, where one party forecloses on another party, such as Deutsche Bank, and in failing to name that other interested party, they similarly fail to extinguish that other party's interest. As the Act provides, they may adjudicate their respective interests, but the ultimate foreclosure order is subject to the other party's interest. So in this case, in conclusion, where the Bank of New York had a first priority mortgage and a forged release does nothing to affect that first priority mortgage, and the Deutsche Bank foreclosure where they were on notice and where they were relying on a forged release, it does nothing to affect the first priority mortgage that Bank of New York had. For those reasons, we ask this Court find it in favor of the Bank of New York. Thank you. Thank you. Thank you, counsel. Mr. Holloway, rebuttal argument. Thank you, Your Honor. There's really two short points I want to make. First, if Hamadani's title was not subject to the Bank of New York mortgage, then he could mortgage to TCF or to WAMU or to anybody else without that mortgage title itself being subject to the bony mortgage. Now, that's a principle that I think that has not been challenged or contested here, and it's about the first sentence of our original brief. And the second thing is I hope that the equitable estoppel argument that we have asserted here is alive and well. I mean, after all, if there was ever a case for equitable estoppel, namely to estop Bank of New York from asserting that the release is genuine, why is this the case? I mean, goodness, you've got in the record here on June 29th of 2000, no, excuse me, it was March 26th, 2006, that the servicer for Bank of New York somehow came across the release and did its research and then there's an affidavit or a research paper in there talking about that. The attorneys for Bank of New York on the eve of their drafting a foreclosure complaint do their own research and they conclude, they obtained from GN Mortgage on June 29th, 2006, that the release is a forgery. At that point, they're looking at a title where, you know, it depends how you count them, six or seven parties, one after the other after the other, that have relied on this release. By the way, the release is as good as any you'll find. We cited a case of, I think it's called Dozier, In Re Estate of Dozier, an Illinois case, that points out that when the fee title is merged with the mortgage title, that the mortgage title disappears and that's the way of doing it. Besides that, the document is captioned in bold, release of mortgage or trust deed at the top and says about the same thing at the bottom. All these parties relied on it, for that matter, even Bank of New York. They're asserting themselves. So the real dependence wasn't enough to put WAMU on notice that Bank of New York had some interest in the property? Really, no. Because, well, you've got to look beyond that. First of all, if they knew about it and it was recorded, they should have. Constructively, they knew about it. Okay. So whether they actually looked, I don't know. But what would they find? There's nothing in the release or in the notice of foreclosure that refers to the Ford's release. There's nothing in the foreclosure. No, but they know there's a property. Is it proven for any bank? I mean, in hindsight, let's be candid. You're representing them. You're WAMU. You know that another bank is asserting an interest in this property, and you think it's okay to just go ahead and ignore that and we'll figure it out later. Well, I think you should not confuse inquiry notice with constructive notice. Remember, inquiry notice. It was always pendants. We agree on that. Okay, but that's constructive notice. Right. That's not, you know, where we have some actual notice that puts us on inquiry. In most cases, what would you have but it was pendants? I mean, a bank wakes up and realizes there's a problem. They file this notice. That's all they can do at that point. The meter's running. And, Your Honor, what if they made a big search? All they learned is exactly what we have laid out here, that Bank of New York's mortgage was foreclosed off the chain of title in 2004. But then they'd see that a complaint of foreclosure was filed thereafter, and if I'm representing WAMU at the time, I at least reach out to someone, whether it's the clerk of the court, make a trip to the courthouse, pull that file and look at the complaint and see, whoa, they're alleging a forged release. I mean, the complaint would tell you that. If they called up Bank of New York, they'd find that out. I mean, we're talking about not closing your eyes to something that may be a problem. It's true you could close your eyes when you're put on inquiry notice. But, again, inquiry notice requires real knowledge, knowledge of something, you know. Would it have been okay if Bank of New York had filed something that suggests that there was a forgery in the title? Is that enough? Really, I don't think that would have made the slightest difference. What could they have done? Nothing. They didn't have a mortgage. This constructive notice, none of that matters because there's nothing they could have done anyway. So why is that a viable argument for you? Bank of New York has a void mortgage. It doesn't have anything to foreclose. I mean, that's the point. I mean, what else would it have after the foreclosure? Otherwise, you're saying that foreclosure against unknown parties under the Illinois Mortgage Foreclosure Act doesn't do what it says it can do. Again, you've got to file an affidavit. The affidavit says you have to make a search. Nobody, there's nothing in this record to challenge that affidavit or that it was improper or whatever. It was accepted by a judge in Kane County when that foreclosure was presented. Thank you for your attention. Thank both attorneys for their argument. Thank you. And we'll take the case under review.